Defendant-appellant, Lawrence Trott, appeals his pandering obscenity convictions in Mahoning County Court No. 2, Boardman, Ohio. For the following reasons, the judgment of the trial court is affirmed.
 I. STATEMENT OF FACTS
On October 9, 1991, Detective Jeff Heaver of the Boardman Township Police Department entered Video Expo, an adult video store, in Boardman owned by Vidcap, Inc. The store contained many videotapes with covers that plainly depicted various sex acts. Detective Heaver purchased a videotape entitled Raunch-O-Rauma Climactic Scenes Number Five from sales clerk Robin Daniels.
On December 23, 1991, Detective Heaver returned to the store to execute a search warrant. Robin Daniels made a phone call and shortly thereafter appellant arrived at the store. According to Detective Heaver, appellant identified himself as manager of Video Expo. Appellant counted the items seized by the police, which included seventy-two videos, and initialed the police inventory sheet.
On March 11, 1992, appellant, among others, was indicted by the Mahoning County Grand Jury on two counts of first-degree misdemeanor pandering obscenity in violation of R.C. 2907.32(A) (2), (C). The case was then transferred to Mahoning County Court No. 2. In April, appellant pled not guilty to the aforementioned charges and waived his right to a speedy trial.
A bench trial was held on August 16, 1993. After the trial, the court took the decision under advisement and declared that it would announce its decision in approximately five days. However, the court did not announce its decision until February 15, 1994, six months after the case was submitted to the court. On March 1, 1994, the court mailed a copy of its judgment entry to appellant's attorney. In said judgment entry, the court found appellant guilty on both counts of pandering obscenity. The court sentenced appellant to thirty days on each count, but suspended the sentences, and fined appellant $250.00 plus court costs on each count. The within appeal followed.
 II. ASSIGNMENT OF ERROR NO. ONE
Appellant sets forth three assignments of error, the first of which alleges:
 "THE DEFENDANT-APPELLANT WAS DENIED HIS RIGHT TO A SPEEDY TRIAL PER ARTICLE I, SECTION 10 OF THE CONSTITUTION OF THE STATE OF OHIO."
Appellant contends that the court's delay of six months from submission of the case until release of the judgment entry constitutes a violation of his right to a speedy trial and due process of law. Appellant supports his argument by quoting R.C.2938.11(F), which provides in pertinent part:
 "Any finding by the judge or magistrate shall be announced in open court not more than forty-eight hours after submission of the case to him."
However, the above statutory provision is directory in nature and not a mandatory rule. State ex rel. Turrin v. TuscarawasCounty Court (1966), 5 Ohio St.2d 194, 196. See, also, State v.Fiorenzo (1996), 108 Ohio App.3d 500, 506. In accordance, a violation of R.C. 2938.11 is not necessarily a violation of the constitutional right to a speedy trial. City of Columbus v.Nappi (1966), 5 Ohio St.2d 99, 100.
The Supreme Court has held that, "following an express written waiver of unlimited duration by an accused of his speedy trial rights the accused is not entitled to a discharge for delay in bringing him to trial unless the accused files a formal written objection to any further continuances and makes a demand for trial, following which the state must bring him to trial within a reasonable time." State v. O'Brien (1987),34 Ohio St.3d 7, 9. We believe that this reasoning should also apply to an accused who is waiting for a trial court's decision after trial. If the accused does not demand a decision by filing an objection or a motion, then the accused should not be permitted to appeal on the grounds of a late judgment entry.
With the hope of further clarification of the issue presented in this appeal, however, we will assume arguendo that appellant did object to the trial court's late judgment entry, and we will continue our analysis. The United States Supreme Court analyzes speedy trial issues by utilizing a case-by-case balancing test. Barker v. Wingo (1972), 407 U.S. 514. The following factors must be balanced: length of delay, reason for delay, defendant's objection, and prejudice to defendant. Id. See, also, O'Brien, supra at 10. However, if the delay is not presumptively prejudicial, then the Barker factors need not be examined. Barker, supra at 530. We believe that the court's delay of approximately six months in rendering a decision on a misdemeanor is sufficiently long enough of a delay to mandate our inquiry into the Barker factors.
A recent decision from the Fourth Appellate District used theBarker factors to analyze a case with facts extremely similar to the ones in the case at bar. State v. Adams (July 30, 1998), Adams App. No. 98CA656, unreported. The trial court in Adams
did not render its decision until seven months after it adjourned the bench trial on the defendant's misdemeanor charge. Id. at 3. Although the defendant in Adams filed a motion asking the court to render its decision and the court ignored the motion, the appellate court balanced the Barker
factors and decided against the defendant. Id. at 3-4. After our careful weighing of the Barker factors, we too arrive at a conclusion adverse to appellant.
First, we considered the length of the delay and the reason for the delay. The delay's duration was considerably lengthy. The judgment entry contains no explanation of the reasons for the delay, and we know nothing about the trial court's possibly crowded docket. Since no one factor is controlling, we move on to the third Barker factor which entails throwing into the balance whether appellant raised the delay before the trial court. Appellant's failure to object to the court's delay in rendering a decision weighs against him.
Lastly, we address the issue of prejudice to appellant due to the court's delay in rendering judgment after trial. Appellant makes a conclusory contention that he was prejudiced by the delay. However, we first note that appellant's trial date was originally scheduled for November 16, 1992, and as a result of appellant's request for a continuance, the trial date was reset for August 16, 1993, nine months later. This rescheduling of the trial on appellant's motion, suggests that he was in no hurry to be tried and sentenced.
The significance of the delay is further diminished by the fact that appellant was free on his own recognizance pending trial and sentencing. Moreover, although he was finally sentenced to two thirty-day sentences, those sentences were suspended. These observations, along with the failure on appellant's part to specifically allege any type of prejudice, lead us to the conclusion that the Barker factors weigh heavily against appellant. Under the totality of circumstances, appellant's speedy trial rights were not violated.
As to appellant's vague mention of a due process violation, and pursuant to the rationale hereinabove set forth, "we cannot find the delay to be so unreasonable as to amount to a violation of the principles of fundamental fairness."Adams, supra at 4. Accordingly, appellant's first assignment of error is overruled.
 III. ASSIGNMENT OF ERROR NO. TWO
Appellant's second assignment of error contends:
 "THE COURT ERRED IN FAILING TO DISMISS THE INDICTMENT FOR BEING DEFECTIVE PER CR. R. [sic] 7."
Section (B) of Crim.R. 7 provides in pertinent part:
 "Each count of the indictment or information shall state the numerical designation of the statute that the defendant is alleged to have violated. Error in the numerical designation or omission of the numerical designation shall not be ground for dismissal of the indictment or information, or for reversal of a conviction, if the error or omission did not prejudicially mislead the defendant."
The indictment in the case at bar charged appellant with "COUNTS ONE AND TWO PANDERING OBSCENITY R.C. 2907.32 (A) (2) (C) M-1." Appellant claims that the trial court should have granted his motion to dismiss the indictment because the code section in the indictment is nonexistent. However, appellant's argument is without merit.
Both R.C. 2907.32 (A) (2) and R.C. 2907.32 (C) are existing code sections that appellant violated. The (C) in the indictment is capitalized which means that it is not a subsection of (A) (2), but is the next section after (A) and (B). The indictment simply omitted a comma or the word "and" between the (2) and the (C). Appellant fails to indicate how this omission prejudicially misled him. The wording in the indictment is clear and gave appellant adequate notice of the crime with which he was charged. Therefore, appellant's second assignment of error is overruled.
 IV. ASSIGNMENT OF ERROR NO. THREE
Appellant's last assignment of error alleges:
 "THE COURT ERRED IN FINDING THE DEFENDANT-APPELLANT GUILTY SINCE THE STATE FAILED TO SUSTAIN ITS BURDEN OF PROOF."
This assignment basically contends that the state presented insufficient evidence to support his conviction. Whether or not the state's evidence is sufficient is a question of law dealing with adequacy. State v. Thompkins (1997), 78 Ohio St.3d 380,386. This court must determine if, "after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Goff (1998),82 Ohio St.3d 123, 138, quoting State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
The essential elements of the pandering obscenity offenses for which appellant was convicted are contained in R.C.2907.32, which reads in relevant portion:
 "(A) No person, with knowledge of the character of the material or performance involved, shall do any of the following:
* * *
 (2) Promote or advertise for sale, delivery, or dissemination; sell, deliver, publicly disseminate, publicly display, exhibit, present, rent, or provide; or offer or agree to sell, deliver, publicly disseminate, publicly display, exhibit, present, rent, or provide, any obscene material;
* * *
 (C) Whoever violates this section is guilty of pandering obscenity, a misdemeanor of the first degree. [A subsequent offense is a fourth-degree felony]."
The required scienter for pandering obscenity is clarified in R.C. 2907.35 which explains:
 "(A) An owner or manager, or his agent or employee, of a bookstore, newsstand, theater, or other commercial establishment engaged in selling materials or exhibiting performances, who, in the course of business:
* * *
 (2) Does any of the acts prohibited by section 2907.31 or 2907.32 of the Revised Code is presumed to have knowledge of the character of the material or performance involved, if he has actual notice of the nature of such material or performance, whether or not he has precise knowledge of its contents."
Appellant claims that, because he never personally viewed the videotapes, he had no knowledge that they were obscene. However, the statute does not require the state to demonstrate that appellant was aware of the actual contents of the videos. The state need only show that appellant was on notice of the nature of the videos. State v. Burgun (1978), 56 Ohio St.2d 354,364; State v. White (1989), 65 Ohio App.3d 564, 569. Circumstantial evidence is sufficient to prove appellant's knowledge of the nature of the videos. Burgun, supra at 364. This is especially true when all employees have a full view of the videos' covers and those covers clearly depict the nature of the video in a graphic manner. After reviewing the pictures of the covers submitted as exhibits by the state, it is unrealistic to suppose that appellant was unaware of the nature of the merchandise carried by Video Expo. Accordingly, sufficient evidence existed to support the finding that appellant possessed the requisite state of mind. Moreover, to embrace the argument advanced by appellants would make it virtually impossible to ever obtain a pandering of obscenity conviction. To require a personal viewing of the product makes no more sense than if we set forth a personal tasting of a narcotic as a condition precedent to a drug trafficking conviction. Knowledge can, in both cases, be imputed from the facts of a case.
Appellant also argues that the only act that he engaged in was taking inventory during the execution of the search warrant. His argument avers that an employee who merely takes inventory does not promote or advertise, or offer or agree to sell, exhibit, or rent obscene materials. However, the trial court found and appellant's brief admits that he was the manager of Video Expo. Testimony established that appellant was the person the store's employees called when there were problems.
Appellant's authority at Video Expo is also apparent after reviewing the state's exhibits which demonstrate that appellant signed a zoning occupancy permit and a fire prevention application and acknowledged that he was "duly authorized to act on the owner's behalf." Moreover, by taking inventory, appellant essentially worked the sales floor surrounded by videotapes with obscenities on their covers. As the manager who chose to supervise the execution of the search warrant, appellant made it apparent that he agreed to sell or exhibit obscene material.
Appellant admitted that he was the "corporate rep." He also testified that various films were played throughout the store on a closed circuit television and that he often restocked "feature films." Such actions can be construed as promoting the sale of obscene material. In accordance, appellant's third assignment of error is overruled.
For the foregoing reasons, the judgment of the trial court is affirmed.
Donofrio, J., dissents, see dissenting opinion.
Waite, J., concurs.
APPROVED:
 ------------------------- JOSEPH J. VUKOVICH, JUDGE